UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAIRY ROSS,

     Plaintiff,

v.

MMI ASSET MANAGEMENT
GROUP, LLC, a Nevada limited
liability company,

     Defendant.

_____ /

Case No. 24-10342

F. Kay Behm
United States District Judge

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 8)

## I.    PROCEDURAL HISTORY

This matter is before the court on Plaintiff Fairy Ross' Motion for Summary Judgment (ECF No. 8). Ross filed her Complaint in Oakland County Circuit Court in January 2024, alleging breach of contracts (Count I) and seeking an equitable accounting of stock and distributions allegedly owed to Ross (Count II). *See* Complaint, ECF No. 1. On February 9, 2024, Defendant MMI Asset Management Group, LLC ("MMI"), filed a notice of removal to federal court pursuant to 28 U.S.C. § 1446(b), 28 U.S.C. § 1441(a), and the federal diversity requirements set forth in 28 U.S.C. § 1332(a). *See* ECF No. 1.

1

On March 4, 2024, Ross filed for summary judgment on Count I only.  ECF No. 8 ( "Plaintiff's Motion").  Following a number of delays, including the emergency withdrawal of MMI's previous counsel, MMI filed their response in opposition to Ross's motion for summary judgment on June 6, 2024.  *See* ECF Nos. 19, 20.  After this court's order to strike those pleadings for deficiencies in filing (ECF No. 25), MMI resubmitted an amended Response on August 6, 2024.  *See* ECF No. 27 ("Defendant's Response" and "Def's Resp.").  MMI refiled their exhibits several times (*see* ECF No. 28, 31), but were stricken; the final exhibits attached to their response are filed at ECF No. 32.  Ross filed a reply on August 7, 2024.  ECF No. 29 ("Plaintiff's Reply"). A hearing on the motion was set for September 18, 2024 and was held with counsel for both parties.  At oral argument, Plaintiff made an oral motion to dismiss Count II in the event that her motion for summary judgment is granted.  For the reasons set out below, the court **GRANTS** Plaintiff's Motion for Summary Judgment on Count I and **DISMISSES** Count II without prejudice.

## II.   FACTUAL BACKGROUND

Ross alleges that in 2013, MMI sold her two promissory notes in exchange for payments in the principal amounts of those notes.  *See*

ECF No. 1, PageID.8, 11.  Ross and MMI differ on the characterization of these transactions.  *Compare* Plaintiff's Motion, ECF No. 8, PageID.99 (characterizing the transactions as Ross investing in MMI, and in exchange Ross receiving promissory notes from MMI), *with* Def's Resp., ECF No. 27, PageID.1658, 66 (describing the transactions as investments, but between MMI, a third-party Canadian real-estate investment conglomerate, and Ross' self-directed IRA).

A brief foray into definitions: a self-directed individual retirement account (SDIRA or self-directed IRA) is a type of IRA that can hold various alternative investments normally prohibited from regular IRAs, such as promissory notes or real estate.  Jason Stauffer, *What is a self-directed IRA and how does it work?*, CNBC (Sep. 10, 2023), https://www.cnbc.com/select/what-is-a-self-directed-ira/.  Although a custodian or trustee administers the account, it is directly managed by the account holder (ie. the account holder has complete control over all investment decisions), which is why it is referred to as self-directed. The custodian might offer consultation, but ultimately their role is to act as the bank and approve any transactions.  *See id.*; *Jones v. Horizon Tr. Co.*, No. 17-11304, 2019 U.S. Dist. LEXIS 27198, at *15 (E.D. Mich. Feb. 21, 2019); *see also* Bob Carlson, *Beware Of The Scams Using Self-*

*Directed IRAs*, Forbes (Nov. 15, 2021)

https://www.forbes.com/sites/bobcarlson/2021/11/15/beware-of-the-

scams-using-self-directed-iras/ ("An IRA custodian is not your

investment advisor or attorney. It isn't there to give you advice or vet

your transactions.").

Here, Ross cut her self-directed IRA administrator, Premier Trust

Inc., two checks, which were then sent to MMI from her SDIRA on Ross'

behalf and at her direction.  *See* ECF No. 32-8; ECF No. 32-9.  In

return, MMI issued two promissory notes, addressed to "Premier Trust,

Inc., FBO Fairy Boyd-Ross," and listing the balances on those notes as

"payable to" Fairy Boyd-Ross.  *See* ECF No. 32-8, ECF No. 32-9; *see also*

ECF No. 8-2; ECF No. 8-3.[1]  Plaintiff had previously purchased similar

notes not at issue in this case, via a different self-directed IRA

administrator called Summit Trust Company. *See generally* ECF No.

32-2.

One note in this case was for a $150,000 principal paid in August

2013 ("Note No. 670") (ECF No. 8-2); the other was for a $20,000

---

[1] *See also* Def's Resp., ECF No. 27, PageID.1658 (noting that Note No. 670 mistakenly lists "MMI" as both "Borrower" and as Ross' Agent, and that "Agent" should instead read "Premier Trust Inc. FBO Fairy Boyd-Ross", consistent with Note No. 675D).

principal paid in November 2013 ("Note No. 675D") (ECF No. 8-3).  Both

notes provide that MMI would owe 7% interest per year and that the

notes would become due 8 years later, in 2021.  Note No. 670, ECF No.

8-2; Note No. 675D, ECF No. 8-3.  Previous notes issued to Plaintiff by

MMI list Plaintiff as "Lender" in the note itself; these two particular

documents do not (the previous notes otherwise contain largely the

same terms and conditions as the two at issue here).  *Compare, e.g.*,

ECF No. 32-2 (Loan dated 1/20/2009), *with* Note No. 670, ECF No. 8-2;

Note No. 675D, ECF No. 8-3.  Ross claims that she has received no

payment from MMI on either note at issue in this case.  Declaration of

Fairy Ross, ECF No. 8-1.  MMI largely denies Ross' claim that she has

received no payment on the notes.  *See* Def's Resp., ECF No. 27,

PageID.1659.

MMI subsequently used the funds obtained by Ross' purchase of

the notes to invest in pre-development land investments offered by the

Walton Group of Companies, a Calgary, Canada based consortium.  *See*

Answer, ECF No. 5, PageID.65.  In 2018, a restructuring event resulted

in certain obligations of the Walton companies, including obligations

owed to MMI as a result of its investments, being consolidated in a

newly-formed Canadian entity called Roll-Up Corporation ("RUC").  *See*

*id.* at PageID.66.  MMI received shares in RUC in connection with the restructuring event.  *Id.*  Ross and MMI disagree about whether MMI has continued to receive distributions from RUC.  *Id.*  MMI claims, however, that whatever Ross was owed under the promissory notes, she has received everything she was entitled to because she received dividends from the Walton investments when Walton's obligation to MMI was restructured into RUC.  *See* Def.'s Resp., ECF No. 27, PageID.1659.

## III.   STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the

non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

## IV.   ANALYSIS

### A.   Applicable State Law

Ross asserts that the promissory notes are enforceable under Michigan law. ECF No. 8, PageID.108.  MMI offers no response on this point.  However, the court must first determine whether Michigan law applies to this case.

This case is before the court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and Ross' claim is based entirely on state law. Therefore, the court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Federal courts sitting in diversity also apply the choice-of-law rules of the forum state (in this case, Michigan's choice-of-law rules). *Equitable Life Assur. Soc. of United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998).

Michigan recognizes choice-of-law provisions, and as an initial matter its courts determine whether the parties in a contract dispute are bound by such a provision. *See Barshaw v. Allegheny Performance Plastics, LLC*, 334 Mich App 741, 748 (2020). When determining whether to give effect to a choice-of-law provision, the expectations of the parties must be balanced with the interests of the states. *Martino v. Cottman Transmission Systems, Inc*, 218 Mich. App. 54, 60 (1996) (citing *Chrysler Corp v. Skyline Industrial Services, Inc*, 448 Mich. 113, 125 (1995)). The parties' choice of law should be applied if the issue is one the parties could have resolved by an express contractual provision. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2006). However, there are exceptions. The parties' choice of law will not be followed if (1) the chosen state has no substantial relationship to the parties or the transaction or (2) there is no reasonable basis for choosing that state's law. *Hudson v. Mathers*, 283 Mich. App. 91, 96-97 (2009); *see also* Restatement (Second) of Conflict of Laws, § 187 (Am. L. Inst. 1988). Also, the chosen state's law will not be applied when it would be contrary to the fundamental policy of the forum. *See Martino*, 218 Mich. App. at 60-61.

Though neither party addresses this point in their briefs, both promissory notes at issue in this case contain a choice of law provision with the following language:

> GOVERNING LAW: *This Note will be governed by the laws of the State of Delaware.*

ECF No. 1, PageID.51; *Id.* at PageId.54 (italics added).

Neither party is from Delaware.  Ross is a citizen of Michigan; MMI is a single-member LLC whose citizenship is foreign.[2]  ECF No. 26.  Neither party alleges that Delaware has any relationship to either transaction at issue, other than that it is listed in the notes.  The court finds that Delaware has no substantial relationship to the parties or the transaction, and will therefore apply Michigan law.

## B.   Plaintiff has met their burden of establishing the elements of breach of contract.

To prevail on its claim for breach of contract, Ross must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach.  *Bank of Am., NA v. First Am.*

---

[2] MMI's sole member is a Canadian citizen.  ECF No. 26.  MMI is incorporated in Nevada.  ECF No. 5, PageID.59.

*Title Ins. Co.*, 499 Mich. 74, 100 (2016).[3]  The court finds that Plaintiff

Ross has met its burden to prevail on each element.

### 1.   Ross has proven the existence of a contract.

A valid contract requires five elements: (1) parties competent to

contract, (2) a proper subject matter, (3) legal consideration, (4)

mutuality of agreement, and (5) mutuality of obligation.  *AFT Mich v*

*Michigan*, 497 Mich 197, 235 (2015).  A promissory note constitutes a

written contract.  *Joseph & Anita Russell Tr. v. Russell*, 338 Mich. App.

170, 179 (2021) (quoting *Collateral Liquidation, Inc v Renshaw*, 301

Mich 437, 443 (1942)).[4]

---

[3] Although the court applies Michigan state law to resolve the instant case, the result would be the same under Delaware law, which provides the same elements of a breach of contract claim.  *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) ("In a breach of contract claim under Delaware law, a claimant must prove (1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach.").

[4] Again, the analysis is the same even if Delaware law were applied.  A contract exists under Delaware law when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration.  *Estate of Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010).  A "promissory note" is a "promise or engagement, in writing, to pay a specified sum at a time therein limited . . . to a person therein named, or to his order, or bearer."  Black's Law Dictionary 1093 (5th ed. 1979).  A promissory note, when structured as an investment or loan, is enforceable as a contract.  *Cf. Washington v. Preferred Commun. Sys.*, 157 A.3d 1226, 1228 (Del. 2017) (action brought for default on promissory notes purchased as investments).

The two promissory notes at issue are valid contracts.  Each is proof of an agreement between Ross and MMI, and contains terms describing in detail MMI's obligations on the basis of a loan principal provided by Ross.  Neither note explicitly defines Ross' own obligations – however, the parties agree that Ross' responsibility under the investment or loan agreement was to provide the principal amount listed on each note via her self-directed IRA, which she did.  *Compare* Declaration of Fairy Ross, ECF No. 8-1, *with* Def's Resp., ECF No. 27, PageID.1658-59.  MMI also provided evidence of Ross' payment for at least Note No. 670 via her SDIRA.  ECF No. 32-8, PageID.4421 (check for $150,000 from Flint Area School Employees Credit Union to Premier Trust, Inc.).[5]  And while Ross has provided a declaration that she paid those principal amounts in consideration of the promises in the notes to repay the principal plus interest, *see* ECF 8-1 (Declaration), MMI provides nothing to refute this mutual exchange of promises.  Both notes thus treat Ross as the lender in a loan transaction, and though

---

[5] At times at oral argument, MMI's counsel appeared to represent that MMI disputed that Ross ever provided a $20,000 check for Note 675D, since there is no copy of that check in the records MMI produced as exhibits attached to their response.  But Ross has provided an declaration that she did pay $20,000 to MMI, the promissory note is itself evidence that she "loaned" that money, and MMI has provided no evidence, including affidavits or declarations, to dispute Ross' evidence. *See* ECF No. 8-1, 8-3.

these particular notes never specifically identify Ross as the "Lender," previous notes in the parties' course of dealing did identify her as such. *See* ECF No. 32-2, PageID.3197.  That Ross is the "lender" on the two notes in question is further evidenced by the fact that Ross is the payee on both notes.  Note No. 670, ECF No. 8-2 ("payable to Fair J. Boyd-Ross"); Note No. 675D, ECF No. 8-3 (the same).  Therefore, Ross has provided sufficient evidence to prove the existence of a contract, and given no controverting evidence, no reasonable jury could conclude otherwise.

At times, MMI appears to argue that the language listed in the "Agent" section of the promissory notes might make MMI's promise payable to "Premier Trust Inc. Agent FBO Fairy Boyd-Ross" instead of Ross.  But just as a holder of a bank account would sue to recover funds owed to their account, courts have held that the holder of a self-directed IRA is the correct party in interest to bring actions to enforce rights under the investments held in the account.  *See, e.g.*, *Deem v. Baron*, 2016 U.S. Dist. LEXIS 50681 (D. Utah April 14, 2016) (collecting cases). Regardless, Premier Trust Inc. has since assigned whatever interest it had in both promissory notes to Ross directly.  *See* Pl's Reply, ECF No. 29-1, PageID.3136-37; *see also Reserves Dev. LLC v. Crystal Props.*,

*LLC*, 986 A.2d 362, 370 n.24 (Del. 2009) (such assignments of rights are valid).

MMI has thus provided no evidence from which a jury could conclude that Ross is not entitled to the benefit of MMI's promises under the terms of Note No. 670 and 675D.

### 2.   Ross has proven breach by MMI.

In support of her motion, Ross has presented her declaration that she has received no principal or interest payments on either promissory note.  ECF No. 8-1.  Her declaration, and ability to testify to that fact, meets the standard of a supporting fact under Rule 56.  *See* Fed. R. Civ. P. 56(c)(1)(A), 56(c)(4) (declarations are admissible to support a motion for summary judgment if based on personal knowledge and set out facts which would be admissible in evidence).  MMI, for its part, denies that Ross has received no payment on the notes.  *See* Def's Resp., ECF No. 27, PageID.1659.  But despite that denial, MMI has presented no facts to contradict Ross' claim.  In over 1200 pages of supporting documentation, the relevance of most of which the court is frankly unsure, the court is unable to locate any facts or evidence which indicates that Ross has received any principal or interest on these particular notes at issue (nor, for that matter, does MMI point to any).

It is not the court's job to search the record in support of a party's arguments. *See Emerson v. Novartis Pharm Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956) (7th Cir. 1991) ("'Judges are not like pigs, hunting for truffles' that might be buried in the record.").

Instead, in response to Ross' relatively straightforward motion for breach of contract, MMI presents an almost entirely different story. MMI's response to Ross' Motion essentially argues that MMI invested funds, provided by Ross in her payments to MMI, in land investments offered by Walton Group, and Ross was aware that the funds she invested would be used that way. *See* Def's Resp., ECF No. 27. MMI's theory seems to be that Ross was investing in Walton's land investment offerings through her dealings with MMI, and therefore cannot seek to collect on the promissory notes she received from MMI. In its view, as far as the court understands, Ross must be content with a share of whatever success, or lack thereof, MMI found in the land investments for which it used her money. MMI makes this argument despite documents that it submitted, which indicate that those land investments were intended to secure MMI's promise to pay, not subvert it. *See* ECF No. 32-1, PageID.3183 ("Principal Guarantee – note holders

15

will have a security interest in the underlying investments secured up to but no more than 75% of the originating principal."). Moreover, each note plainly contemplates MMI's use of the funds without changing the nature of the notes as traditional loans with interest. Each note contains the following provision:

> USE OF LOAN PROCEEDS: Lender is making this loan to Borrower for traditional lending purposes. It is anticipated that while Borrower may use the funds for any purpose(s), that the funds . . . may also include secondary investing of these funds into real estate investments . . .

Note No. 670, ECF No. 8-2; Note No. 675D, ECF No. 8-3. The notes thus on their face contradict Defendant's argument; any secondary investments made with the lender's funds are separate transactions and are unrelated to the "traditional lending" purpose of the notes themselves.

MMI relatedly (or perhaps in the alternative) appears to argue that, because Ross was seeking to invest, albeit indirectly, in Walton's land investments, which were only open to Canadian citizens, she cannot now seek recourse from MMI because Ross is an American citizen. *See* Def's Resp., ECF No. 27, PageID.1666. Wherever this argument is meant to lead, the court need not follow – again, nowhere does MMI show why either MMI's underlying investments, or Ross'

national citizenship, is relevant to the question of whether <u>MMI</u> is liable for its straightforward promise to pay Ross on the notes it issued her.

Each note purports to create, essentially, a simple loan agreement "for traditional lending purposes" between MMI and Ross (Note Nos. 670 and 675D); Ross loaned MMI a total of $170,000 in exchange for promises that MMI would repay her in 8 years or less with 7% interest per year on the principal amounts.  MMI has provided no evidence from which a jury could find otherwise.  All that MMI's allegations and supporting documentation tend to prove is that MMI used the funds it obtained from its agreement with Ross to invest elsewhere.  Ross is therefore entitled to summary judgment that MMI has breached its promises under Note No. 670 and 675D.

### 3.   Ross has proven damages as a result of MMI's failure to pay on the contracts.

In her motion, Ross calculates her damages as follows: a) for Note No. 670, $150,000 for unpaid principal, and $105,000 for unpaid interest accrued over the ten years from August 8, 2013 to August 8, 2023, and b) for Note No. 675D, $20,000 for unpaid principal, and $14,000 for unpaid interest accrued over the ten years from November

21, 2013 to November 21, 2023.  As discussed above, *see infra* Section IV.B.2, Defendant has provided no evidence to dispute that Ross has received no payment on these particular notes.  However, at oral argument, Plaintiff stipulated that they no longer seek ten years of interest, but instead eight years as indicated by the terms of the notes. Note No. 670, ECF No. 8-2 (listing the total interest on the note as $84,000, calculated as $10,500 per year over eight years); Note No. 675D, ECF No. 8-3 (listing the total interest on the note as $11,200, calculated as $1,400 per year over eight years).

Unless there is a valid defense to enforceability, "a court must construe and apply unambiguous contract provisions as written." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461 (2005).  Both promissory notes clearly lay out not only the principal amount, but the calculation of total interest over the note term of eight years, not ten.  Accepting Plaintiff's oral stipulation as to the scope of their argument and interpreting the contract as written, the court calculates damages as indicated on the notes themselves:

| Note Number | Principal | Interest (over 8 years) | Total Due and Payable |
|---|---|---|---|
| 670[6] | $150,000 | $84,000 | $234,000 |
| 675D[7] | $20,000 | $11,200 | $31,200 |
| | | *Total* | **$265,200** |

## C.    Summary judgment is not premature on Count I.

As an additional response to Ross' motion, MMI asserts that
summary judgment on Count I is premature at this stage of the
proceedings.  *See* Def's Resp., ECF No. 27, PageID.1669-70.  Thus, the
court must analyze whether that is the case.[8]

A party may move for summary judgment at any time, even as
early as the commencement of the action. *See* Fed. R. Civ. P. 56(b). The
Sixth Circuit has warned that generally, "in the absence of any
discovery . . . ruling on a summary judgment motion is . . . an abuse of
discretion."  *First Floor Living LLC 22-3216 v. City of Cleveland*, 83
F.4th 445, 453 (6th Cir. 2023) (citing cases) (cleaned up).  But Rule 56

---

[6] ECF No. 8-2.

[7] ECF No. 8-3.

[8] For the first time, at oral argument MMI also asserted that this court does
not have personal jurisdiction over MMI.  A challenge to personal jurisdiction must
be raised in the first responsive pleading or be waived. Fed. R. Civ. P. 12(h)(1);
*Taubman Co. v. Webfeats*, 319 F.3d 770, 773 (6th Cir. 2003).

warns non-movants that, if they require more time to present their claims or defenses, then their request to extend their time to respond or to have discovery on particular points must be specific.  *See* Fed. R. Civ. P. 56(d) (indicating that a court must deny or defer a motion for summary judgment when a non-movant shows "by affidavit or declaration that, *for specified reasons*, it cannot [yet] present facts essential to justify its opposition") (emphasis added).  Thus, despite the "strong presumption" in favor of permitting discovery before ruling on summary judgment, the Sixth Circuit has affirmed that seeking discovery to survive a Rule 56 motion using only "general and conclusory statements" lacking "any details or specificity" is not sufficient to delay judgment on the motion.  83 F.4th at 453 (citing *Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022)).

In support of its argument to defer summary judgment, MMI asserts that discovery and more factual development are needed because "the facts suggest a nuanced situation," to grant summary judgment would "undermine the integrity of the judicial process," and a "thorough examination of the facts" is necessary.  Def's Resp., ECF No. 27, PageID.1669.  But these bare assertions are exactly the kind of "conclusory" statements which are insufficient to establish a need for

20

discovery and, in any event, are unsupported by an affidavit.  The terms of the promissory notes MMI issued are clear.  *See United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007) ("[P]arol evidence cannot be used to manufacture an ambiguity in a contract that facially has only one reasonable meaning.").

Additionally, any evidence that would show that, notwithstanding the plain language of those notes, MMI does not owe Ross performance on the promissory notes, would be in MMI's possession.  For that matter, evidence that would show that MMI has in fact paid Ross on the notes would also be in MMI's possession.  MMI has not presented any evidence, declarations, or affidavits to indicate that such evidence would be forthcoming if the court were to defer judgment on Plaintiff's Motion.

## V.    CONCLUSION

Therefore, even viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could find that the promissory notes do not provide the terms of two contracts between the parties, nor that Defendant MMI is not in breach of those contracts.  The court **GRANTS** Plaintiff's Motion for Summary Judgment on Count I.  Ross

is therefore entitled to a total of $265,400 due and payable as principal

and interest on the two notes.

Furthermore, per Plaintiff's oral motion to dismiss Count II in the

event that summary judgment is granted as to Count I, Count II is

**DISMISSED** without prejudice.  This is a final order that closes the

case.

**SO ORDERED**.

Date: September 26, 2024                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge